UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ANDREW SALES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:09CV160SNLJ |
| | ) |
| TYSON FOODS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff has filed this employment discrimination suit against defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. This matter is before the Court on defendant Tyson Foods, Inc.'s motion for summary judgment, filed November 22, 2010 (#48). Plaintiff has filed a response (#54) and a "surreponse" (#71). Defendant filed a reply (#64) and a sur-reply (#75). This matter is now ripe for disposition.

### I.     Background

The following facts are, unless otherwise indicated, undisputed. The defendant, Tyson Foods, Inc. ("Tyson"), hired the plaintiff, Andrew Sales, on January 11, 2009 to work at Tyson's facility in Dexter, Missouri. Plaintiff, who is African-American, worked the second shift, from 2:00 p.m. to 11:00 p.m. During their first eight weeks of employment, employees are to work no more than eight hours per shift; however, on January 21, 2009 (ten days after plaintiff was hired), plaintiff was asked to work overtime for about thirty minutes to help meet production demands. Production demands sometimes required second-shift employees — even new hires — to work overtime until production is finished. (Plaintiff disputes this, but he does not support any

contention to the contrary.) Although other newly-hired employees worked overtime that night, the plaintiff refused.

Defendant's Rules of Conduct Policy — which plaintiff received — explains that insubordination or refusal to perform a work assignment constitutes misconduct. However, when plaintiff was told he would be fired if he did not work overtime that night, he persisted in saying he would leave at 11:00 p.m. because of the policy that prevented new hires from working more than eight hours per shift. Plaintiff testified at his deposition that he was not angry, but he also testified and acknowledged that the "look on [his] face, for a lack of a better word, [was] I'm not going to go through this bullshit with you all."

Plaintiff's supervisor asked plaintiff to come to her office on his way out. When he arrived at the supervisor's office, he again stated he would not work past 11:00 p.m., and he refused to return his identification badge. The supervisor left to get a security guard, and plaintiff went to his locker. Another supervisor — Tony Sherrell, who is African American — followed plaintiff to his locker. Plaintiff testified that he wondered whether Mr. Sherrell was going to physically take his identification badge and that he asked Mr. Sherrell, "they didn't tell you all I was a 'big nigga,' did they?" Plaintiff then left the building and refused to give his identification badge to the security guard. Plaintiff disputes that he was loud or belligerent, but four witnesses, including Sherrell, submitted written statements regarding their interactions with and observations of plaintiff on that evening, and confirmed that plaintiff was loud or belligerent. And, based on those statements, defendant states, plaintiff was fired.

The next day, the facility's Assistant Director of Human Resources, Rick Murray, told plaintiff that he was being fired for insubordination and being belligerent. Although plaintiff

disputes that Mr. Murray made the decision to fire him, plaintiff testified in his deposition that Murray was the one who told him the reason for his termination. In addition, Murray told plaintiff that regardless of what he had been told during orientation, plaintiff should have followed his supervisor's orders and then brought the issue to upper management the next day. Murray had been the Tyson employee who hired plaintiff ten days earlier.

Plaintiff appealed Tyson's decision to terminate him within the company's own alternative dispute resolution system. The plant manager determined that plaintiff had been "obviously insubordinate" and should be terminated per company policy. Plaintiff was informed of that decision on or about February 9, 2009. Plaintiff then filed charges of race discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission and received a right-to-sue letter on November 9, 2009. Plaintiff filed this lawsuit on the same day.

## II.    Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no

genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Analysis**

Because plaintiff does not allege direct evidence of discrimination, the Court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to evaluate plaintiff's claims. To establish a prima facie case of race discrimination under Title VII, plaintiff must show that (1) he belongs to a protected class; (2) he was meeting his employer's legitimate job expectations; and (3) he suffered an adverse employment action (4) under circumstances permitting an inference that the action was a result of unlawful discrimination. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 520 (8th Cir. 2010). If

plaintiff can establish a prima facie case of race discrimination, then the burden shifts to the defendant to establish "a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action." *Humphries v. Pulaski Co. Special School Dist.*, 580 F.3d 688 (8th Cir. 2009). If the defendant puts forth such a reason, then plaintiff must show the defendant's proffered explanation is pretextual, or his claim will fail. *Id.*

### A. Plaintiff Fails to Make a Prima Facie Case of Racial Discrimination

Defendant contends that plaintiff fails to make a prima facie case of racial discrimination because he cannot show that he was meeting his employer's legitimate job expectations or that his termination was under circumstances permitting an inference of unlawful discrimination. This Court agrees.

First, as plaintiff testified in his deposition, refusing to follow a reasonable job-related request constitutes insubordination. Defendant's Rules of Conduct Policy explains that insubordination or refusal to perform a work assignment constitutes misconduct, and, as a result, plaintiff cannot show that he was meeting his employer's legitimate job expectations. Plaintiff essentially claims that he was meeting his employer's expectations because he was — as he was told during his orientation — not supposed to work overtime as a new hire. However, the existence of defendant's policy that new hires not work more than eight hour shifts does not by itself create an genuine issue of material fact sufficient to preclude summary judgment here. Plaintiff was asked to work a mere thirty minutes overtime; the other new hires worked the overtime; and plaintiff refused to do so. Such conduct by itself was insubordinate, and plaintiff's subsequent belligerent behavior also did not meet Tyson's reasonable expectations. Specifically, plaintiff admits that he refused to turn over his identification badge to either his supervisor or the

security guard, which demonstrates his belligerence and insubordination. Moreover, regardless of whether he called a supervisor a "nigga" (as defendant's Human Resources director believed) or called himself a "big nigga" (as plaintiff believes), that behavior was insubordinate and threatening and not in compliance with the defendant's Rules of Conduct Policy.

Even if plaintiff had met his employer's legitimate job expectations, plaintiff has not pointed to any circumstances that permit an inference of unlawful discrimination. Plaintiff suggests that Tyson treats insubordinate white employees differently, but Tyson is correct that plaintiff has not pointed to any white employees who were insubordinate but not terminated. In contrast, Tyson provided documents from employee files showing that five white employees have been discharged for insubordination since 2005.

Plaintiff's mere belief that he was treated differently from insubordinate white employees is not sufficient to create an issue of fact necessary to preclude summary judgment. *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006). As in *Canady*, plaintiff has presented no evidence that Tyson treated other insubordinate employees differently, and Tyson has presented evidence of several white employees who were terminated for conduct that was apparently less egregious than plaintiff's. *See id.*

Moreover, "there is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." *Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (quoting *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362 (8th Cir. 1997). It is clear that Mr. Murray, the facility's Assistant Director of Human Resources, hired plaintiff and that he was at least instrumental in firing plaintiff ten days later.

### B. Defendant Had a Legitimate, Non-Discriminatory Reason for Firing Plaintiff

Even if plaintiff had made a prima facie case of discrimination, the defendant had a legitimate, non-discriminatory reason for terminating plaintiff. Certainly, and as the Eighth Circuit has "repeatedly held," "insubordination and violation of company policy are legitimate reasons for termination." *Putnam v. Unity Health System*, 348 F.3d 732, 746 (8th Cir. 2003) (quoting *Kiel v. Select Artificial, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 2003)). In *Putnam*, an African-American employee refused to obey his supervisor's direct order after being warned that insubordination would result in his discharge. Plaintiff was similarly told that if he refused to perform his job as instructed, he would be fired. To the extent plaintiff argues that Tyson's apparent violation of its own policy is evidence of pretext, the Eighth Circuit has held that is not necessarily true. *Anderson*, 606 F.3d at 522. Indeed, regardless of Tyson's own policy and whether exceptions may be made routinely, plaintiff admitted that the "look on [his] face" was exasperated at best, that he twice refused to turn over his identification badge, and that he made a thinly-veiled, racially-based threat to another supervisor when he thought that supervisor was going to take away his identification badge. Thus, even considering plaintiff's version of the events, dismissal of an employee who behaves in such a manner after only ten days is not unreasonable; furthermore, "federal courts do not serve as 'super-personnel departments,' sitting in judgment of an employer's business decisions absent evidence of discrimination. *Id.* (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995)).

### IV. Conclusion

Because plaintiff has not made a prima facie showing of race discrimination, and because — even if he had — he cannot show that defendant Tyson did not have a legitimate, non-

discriminatory reason for terminating his employment, summary judgment will be granted to the defendant, and plaintiff's complaint will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Tyson Foods, Inc's Motion for Summary Judgment (#48), filed November 22, 2010 is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment is hereby entered for the defendant.

Dated this __25th__ day of February, 2011.

                                                    UNITED STATES DISTRICT JUDGE